STATE of Utah, Plaintiff and
Respondent,

v.

Michael JIMINEZ, Defendant
and Appellant.

No. 15776.

Supreme Court of Utah.

Dec. 11, 1978.

Randall Gaither, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Craig L. Barlow, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Justice:

Defendant appeals from a jury trial conviction of the offense of Theft by Deception in violation of U.C.A., 1953, 76–6–405, as amended.

Numerous trial witnesses detailed a long list of misrepresentations made by defendant of his business acumen, grandiose ownership of a string of establishments, including hotels,—even the Continental Bank, fabulous financial connections, and the like, incident to the purchase of a professional soccer team involved in interstate competition. Although defendant claims the state failed to prove a prima facie case, he has not referred to any part of the record that convincingly supports his contention. Our review of the record supports a contrary conclusion.

Defendant's principal contention on appeal, stated briefly, is that the criminal procedure pursued in convicting him was nugatory in that, (1) the Attorney General who filed the complaint through his deputy, had no authority to do so, and (2) that the lower court erred in determining that defendant waived any such jurisdictional lack of authority.

As to (1): Defendant asserts that only the County Attorney has prosecutorial authority in this case to the exclusion of the Attorney General.

The Attorney General and the various County Attorneys are constitutional of-

ficers and are empowered to perform such duties "as may be prescribed by law." [1]

The implementation of Attorney General authority is reflected in U.C.A., 1953, 67–5–1 which reads in pertinent part as follows:

67–5–1. General duties.—It is the duty of the attorney general:.

(1) To attend the Supreme Court of this state, and all courts of the United States, and prosecute or defend all causes to which the state or any officer, board or commission thereof in an official capacity is a party; and he shall have charge as attorney of all civil legal matters in which the state is in anywise interested.

\*    \*    \*    \*    \*    \*

(5) *To exercise supervisory powers over the district and county attorneys of the state in all matters pertaining to the duties of their offices*, and from time to time require of them reports as to the condition of public business entrusted to their charge.

\*    \*    \*    \*    \*    \*

(7) *When required by the public service or directed by the governor, to assist any district or county attorney in the discharge of his duties.* [Emphasis added.] and the like implementation of County Attorney authority is contained in U.C.A., 1953, 17–18–1 which reads in pertinent part as follows:

17–18–1. Powers — Duties — Prohibitions.—The county attorney is a public prosecutor, and must:

(1) Conduct on behalf of the state all prosecutions for public offenses committed within his county, except for misdemeanor prosecutions under city or town ordinances and appeals therefrom.

\*    \*    \*    \*    \*    \*

(14) If at any time, after investigation by and a finding and recommendation from the district judge involved, that the county attorney in any county is unable to satisfactorily and adequately perform his duties in prosecuting a criminal case without additional legal assistance, the attorney general shall provide such additional assistance.

It is readily seen from the foregoing statutory provisions that the Attorney General is authorized to "prosecute . . . all causes to which the state . . . is a party" and he is specifically enjoined to: (1) *supervise* County Attorneys "in all matters pertaining to the duties of their offices"; (2) *assist* them "when required by the public service or directed by the governor"; and (3) to *assist* whenever it is determined by a district judge that a County Attorney is "unable to satisfactorily and adequately perform his duties." Also implicit in the statutes is the authority of the various County Attorneys to themselves *request* the assistance of the Attorney General.

It is to be specifically noted that this case does not involve a confrontation between the Attorney General and a County Attorney as to a conflict in their respective powers and duties, and since that matter is not before us we do not address it.

It is also to be noted that the record is silent as to whether or not the County Attorney concerned either requested or permitted the assistance of the Attorney General in the prosecution of this case. The fact that he has not intervened herein as at least indicative that the subject prosecution was not in any way opposed.

U.C.A., 1953, 67–5–1(5), supra, has been construed by this Court in *Meyers v. Second Judicial Dist. Court* [2] to sanction the Attorney General's appearance through assistants before a Grand Jury, impliedly as a prosecutor, and as an adjunct of his supervisory authority over County Attorneys.

Certainly the framers of the Constitution had no intention to elevate County Attorneys to positions of pre-eminence where they might dictate that the Attorney General, who has supervisory authority over them, could not act in the role of prosecutor under appropriate circumstances. The

---

1. See Constitution of Utah, Article VII, Sections 1 and 18 and Article VIII, Section 10.

2. 108 Utah 32, 156 P.2d 711 (1945).

facts of this case present just such a set of circumstances.

The prosecution here involves far more than the interests of a *single* county. It is a matter of *state-wide* interest that may well involve all 29 counties of this state. In fact it is also a matter of *interstate* interest due to the various negotiations carried on from points outside Utah.

U.C.A., 1953, 67–5–1(1) duly authorizes the Attorney General to "prosecute or defend all causes to which the state . . . is a party" and there appears to be no good reason why he cannot so prosecute on behalf of the state in this instance.

 Our conclusion that the Attorney General was acting within the sphere of his authority is also supported by the common law which Utah has adopted [3] where it is not inconsistent with our own legislation or judicial pronouncements. At common law the top legal adviser was invested with criminal prosecution authority, and such authority is deemed to be that of Attorney General in the common law states of this country.[4] The principle has been recognized in this state where the Attorney General's deputies were held to be able to appear before the Grand Jury, in *Hansen v. Barlow*,[5] where we approved the following language of *Darling Apartment Co. v. Springer*.[6]

> The authorities substantially agree that, in addition to those conferred on it by statute, the office is clothed with all of the powers and duties pertaining thereto at common law; and, as chief law officer of the State, the Attorney General, in the absence of express legislative restriction to the contrary, may exercise all such power and authority as the public interests may from time to time require. In short, the Attorney General's powers are as broad as the common law unless restricted or modified by statute.

We conclude that any conflicts as may exist in the applicable legislative provisions are reasonably reconcilable. To conclude otherwise would provoke the anomalous and somewhat novel situation where the highest legal officer of the state, for all practical purposes, would be subservient to those over whom he otherwise has the power of supervision. We hold that the Attorney General's prosecution of this case was not outside of his area of authority.

Having so concluded, the defendant's remaining Point on Appeal with respect to not having waived jurisdiction as to a void information and prosecution, is moot.

The judgment is affirmed.

ELLETT, C. J., and CROCKETT, MAUGHAN and WILKINS, JJ., concur.

**3.** U.C.A., 1953, 68–3–1.

**4.** *People v. Karalla*, 35 Mich.App. 541, 192 N.W.2d 676 (1971); *State v. Daviess*, 236 Ind. 624, 142 N.E.2d 626 (1957).

**5.** 23 Utah 2d 47, 456 P.2d 177 (1969).

**6.** 25 Del.Ch. 420, 22 A.2d 397, 403 (1941).